Ralph Leonard Polk v. Commissioner.
Polk v. Commissioner
Docket No. 12097.
United States Tax Court
1948 Tax Ct. Memo LEXIS 256; 7 T.C.M. (CCH) 51; T.C.M. (RIA) 48026; February 6, 1948
*256 1. Held, payments for protection from arrests and prosecution are not deductible in determining income. 2. Expenses of actually earning income in illegal businesses are deductible in computing net income subject to tax. 3. Fraud penalties approved. William H. Quealy, Esq., 105 S. La Salle St., Chicago, Ill., and H. C. Castor, Esq., for the petitioner. Gene W. Reardon, Esq., and Harlow B. King, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and penalties against petitioner as follows: Year
Deficiency
Penalty
1940
$ 1,988.05
$ 1,103.71
1941
17,818.83
8,909.42
1942
37,395.48
18,697.74
1943
47,388.51
23,694.26
1944
44,000.27
22,000.14
Jeopardy assessments of the above income tax deficiencies *257 and fraud penalties have been made under section 273, I.R.C.
The parties agreed that the evidence presented in the cases of Max Cohen, Docket Nos. 12,038 and 12,039 [9 TC 1156,]; Robert L. Carnahan, Docket Nos. 12,040 and 12,041 [9 TC 1206,]; G. A. Comeaux, Docket No. 12,010 [10 TC 201,] and Fred D. Clemons, Docket No. 12,096 [7 TCM 81,] may be considered in this case in so far as material and relevant thereto. The cases of these five taxpayers were tried consecutively at Kansas City, Missouri. The issues are: 1. Did Commissioner err in determining that certain payments made by petitioner to Max Cohen, which were apportioned by Cohen to himself and Carnahan, constituted payments for protection against raids and arrests by the law enforcement officials of Sedgwick County and the State of Kansas and that consequently such payments are not deductible for income tax purposes? 2. Did Commissioner err in determining that salaries and expenses of operating an illegal business are not deductible for income tax purposes? 3. Did Commissioner err in determining that the deficiencies of income tax for *258 each of the years 1940 to 1944, inclusive, were due to fraud with intent to evade tax and consequently subject to a penalty of 50 per cent? 4. In the alternative, did Commissioner err in determining that over 25 per centum of gross income was omitted in petitioner's income tax return for the year 1941 and that consequently, the five-year limitation period for assessment and collection is applicable for such year? Other minor issues were abandoned. Findings of Fact The petitioner duly filed his Federal income tax returns for the years 1940 to 1944, inclusive, with the collector of internal revenue, district of Kansas. The notice of deficiencies was mailed to petitioner July 12, 1946. During the year 1940 the petitioner and one Osborn and one Cline erected on the outskirts of the City of Wichita, Kansas, a building for the purpose of operating a night club, known as Canyons Supper Club, where entertainment would be provided, food and alcoholic beverages would be sold and gambling would be conducted. The building was completed in 1940. The sale of alcoholic beverages and gambling were illegal under the laws of the State of Kansas. The above three individuals operated the Canyons *259 Supper Club as equal partners from September 1940 until the death of Osborn and Cline's withdrawal from the business sometime during the latter part of 1940. Thereafter and for the years 1941 to 1944, inclusive, the petitioner was the sole owner and operator of the Canyons Supper Club. Max Cohen furnished the original bank roll or operating fund to the petitioner for operating the gambling activities in the Club. Cohen and Robert L. Carnahan were, during the taxable years, residents of the State of Kansas, who represented to the illegal operators of night clubs that they could afford them protection against arrests and prosecution by the State and County officials. In consideration therefor the owners and operators of such illegal businesses made payments to Cohen and/or Carnahan generally on the basis of a percentage of profits, which payments were usually divided equally between Cohen and Carnahan. If the owner or operator of the illegal business declined or demurred at paying such percentage, expressed or implied threats were made either by Cohen directly or by his representatives. Petitioner originally agreed to pay Cohen 70 per cent of the profits of Canyons Supper Club. This *260 figure was later raised to 80 per cent. Neither Cohen nor Carnahan was a partner in the Canyons Supper Club and neither rendered any physical services toward the operation of the Canyons Supper Club. A voluminous set of books and records was maintained by the bookkeeper in the Canyons Supper Club in which were reported only the transactions pertaining to that part of the business relating to the sale of food and alcoholic beverages. These books were periodically checked by the accountant who prepared the income tax returns for petitioner. The only record maintained for the gambling business was a daily paper slip upon which figures were entered showing the amount of the bank roll at the beginning of the evening's play, the net win or loss, and the balance to be carried forward to the following night. When the amount of the bank roll became larger than was deemed necessary, a part of it was "cut out," and the balance left after such transaction was known as the new bank roll. The periodic cut outs rendered on the paper slips and said sums were usually divided on the basis of 30 per cent to petitioner and 70 per cent to Cohen. Before the payment of the percentage to Cohen the amount *261 furnished by him as bank roll was repaid. The paper slips were periodically turned over to the accountant who prepared petitioner's income tax returns. Cohen orally advised the accountant how reported income of the Club should be allocated and reported among various persons for income tax purposes. For the year 1940 salaries of $4,330 paid to operators of gambling tables were claimed as dedutions by the partnership of Polk, Osborn and Cline in computing the reported total taxable income from the Canyons Supper Club, which deduction has been disallowed by the Commissioner. For the same year petitioner, in his return, allocated 70 per cent of income of the Club, totaling $25,627.24 to Cohen, Carnahan, Freeman and Keirn (Freeman and Keirn being associates or employees of Cohen and Carnahan). Petitioner represented that such parties were partners in the operation of the Club but no partnership return was filed. The Commissioner determined that the sums totaling $25,627.24, represented protection payments and were not deductible for income tax purposes. The Commissioner thereupon determined that $9,985.75 (1/3 of $25,627.24 plus $4,330) constituted additional taxable income to the petitioner *262 for the year 1940. For the year 1941 salaries of $12,776.15 paid to operators of the gambling tables were claimed as deductions and disallowed by the Commissioner. For this year a total of $27,555.72, allocated $9,320.32 to Cohen; $6,078.47 to Carnahan and similar amounts to Freeman and Keirn, was claimed as a deduction in computing the taxable income from the Canyons Supper Club operated by petitioner. The Commissioner determined that the salaries paid and the amounts so allocated constituted a "pay-off for protection" and were not deductible for income tax purposes. For the year 1942 salaries of $15,271.08 paid to operators of gambling tables were claimed as deductions and disallowed by the Commissioner. For this year Commissioner also determined that payments aggregating $43,266.88, claimed as a deduction from the income of the Canyons Supper Club, as reported by petitioner, represented "pay-off for protection" to Cohen and Carnahan and were not deductible for income tax purposes. For the year 1943 salaries of $10,879 of operators of gambling tables, claimed as deductions from the income of the Canyons Supper Club, were disallowed by the Commissioner. Payments in the amounts *263 of $20,547.20 to Cohen; $20,547.20 to Carnahan; $6,917.20 to Joe LaSalle and $8,216.10 to Carmel Christian, totaling $56,227.70, were claimed as deductions as "commissions paid" in computing the taxable income from the Canyons Supper Club, as reported by petitioner, which sums the Commissioner determined constituted a "pay-off for protection" and not deductible from income. For the year 1944 salaries of $11,505 paid operators of gambling tables were claimed as deductions and disallowed by the Commissioner. Payments in the amounts of $19,220.03 to Cohen; $19,220.03 to Carnahan, $6,406.68 to Joe LaSalle and $3,203.34 to Cliff Barnett, totaling $48,050.08, claimed as deductions as "commissions paid" in computing the taxable income from the Canyons Supper Club, as reported by petitioner, were disallowed by the Commissioner as representing "pay-off for protection." The salaries of $4,330 for 1940; $12,776.15 for 1941; $15,271.08 for 1942; $10,879 for 1943 and $11,505 for 1944 paid to operators of the gambling tables at the Canyons Supper Club were deductible for income tax purposes. The payments of $8,216.10 to Carmel Christian and $3,203.34 to Cliff Barnett were payments for services *264 rendered petitioner in the earning of income and were deductible. Joe LaSalle was employed by Cohen and Carnahan to look out for their interests and payments made to him were not deductible. The payments made to Cohen and Carnahan were payments for protection against raids and arrests by the law enforcement officials of Sedgwick County and the State of Kansas and were not deductible. Petitioner filed false and fraudulent income tax returns for the years 1940 to 1944, inclusive, with intent to evade tax. The statutory period of limitation on assessment and collection had not expired for any of the years 1940 to 1944 when the Commissioner mailed his notice of deficiencies. Opinion VAN FOSSAN, Judge: The issues in this case are the same as those before us in G. A. Comeaux, 10 T.C. 201. They were presented on the same record and call for the same conclusions. The first issue is the matter of protection payments. We have found that Max Cohen and Robert L. Carnahan, during the taxable years, represented to the illegal operators of night clubs in Sedgwick County that they could afford them protection against arrests and prosecution by State and County officials; that *265 as consideration thereof, the owners and operators of such illegal businesses made payments to Cohen and/or Carnahan on the basis of percentage of profits, and that these payments were made under such circumstances as to represent payments for protection or tribute to Cohen and/or Carnahan. Counsel for petitioner admits that payments for protection are not deductible in computing income. There is no question in our mind on the record in this case that, albeit we have found that Cohen furnished the bank roll for the gambling operations, the real reason for the payments was the undertaking to afford protection exacted under expressed or implied threats by Cohen and/or Carnahan. Although petitioner's testimony was confused and, in parts unintelligible, we have found therefrom that the bank roll was paid back to Cohen before the split of profits and the making of protection payments to Cohen. In Robert L. Carnahan, 9 T.C. 1206, we observed: "It is significant that neither Cohen nor Carnahan spoke one word in denial of the charge of the Government that they received payments for protection. Cohen, though present in the court room, never took the witness stand, and Carnahan, *266 who appeared as a witness, did not deny either the receipt of the money for protection or any of the accusatory statements made by other witnesses." We observed further in that case: "In view of the large money returns, it is utterly unreasonable to believe that the temporary need of money for the operation of gambling tables, the 'bank roll,' was the sole reason for introducing Cohen and Carnahan into the several transactions * * *. If the payments to Cohen and Carnahan were not a form of tribute, or payments for protection exacted by compulsion, why did the club owners and operators continue to pay, year after year, some as high as 75 per cent of the earnings, amounting to many times the sum claimed to have been advanced as the 'bank roll'? All reasonable inferences from the situation tend to support the testimony that no 'place' could operate in Sedgwick County without paying Cohen. To pay Cohen was to pay Carnahan." We have found that the payments made to Cohen and Carnahan were payments for protection against raids and arrests by the law enforcement officials of Sedgwick County and the State of Kansas. They were accordingly not deductible in computing the income received by *267 petitioner from Canyons Supper Club. The second issue relates to the deduction of salaries paid to various persons employed in the operation of the gambling tables, what we have called in G. A. Comeaux, supra, the "legitimate expenses of an illegitimate business." We held in the Comeaux case that such expenses are deductible. We make a similar ruling here. The amounts appear in the findings of fact. The third issue is a question of fraud. Unless fraud be found for the year 1940, further action by the respondent is barred by the statute of limitations. In our findings of fact we have held that the petitioner was guilty of fraud for all the years here involved. The evidence shows that the petitioner failed to report large items of income; that in computing his income he made large deductions which were without the law and that his returns were well calculated to mislead the Commissioner. It is the duty of every taxpayer to file an honest return; to reveal frankly his income sources and to claim no deductions not reasonably allowable. We will not undertake to recite all of the evidences of fraud apparent on reading of the long record in this case. Suffice it to say that *268 the record contains clear and convincing evidence that petitioner filed fraudulent returns for the years here involved. Respondent's action in assessing penalties is therefore approved. The above disposition of the fraud issue makes unnecessary a discussion of the fourth or alternative issue. Decision will be entered under Rule 50.